BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE J. MICHAEL MULLINS, DISTRICT ATTORNEY, COUNTY OF SONOMA, has requested an opinion on the following question:
May the mayor of a charter city, who is designated as the executive head of the city by the city charter, attend a closed session of the city's redevelopment agency, the members of which are appointed by the mayor with the approval of the city council, when the purpose of the closed session is to conduct a conference with the agency's real property negotiators who are negotiating the disposition and development of property, a portion of which is owned by the city, for construction of a publicly financed and publicly owned city conference center and privately financed and developed hotel complex?
 CONCLUSION
The mayor of a charter city, who is designated as the executive head of the city by the city charter, may not attend a closed session of the city's redevelopment agency, the members of which are appointed by the mayor with the approval of the city council, when the purpose of the closed session is to conduct a conference with the agency's real property negotiators who are negotiating the disposition and development of property, a portion of which is owned by the city, for construction of a publicly financed and publicly owned city conference center and privately financed and developed hotel complex.
 ANALYSIS
The Ralph M. Brown Act (Gov. Code, §§ 54950-54962; "Brown Act") requires the "legislative body" of a "local agency" to hold its meetings open to the public unless a specific statutory exemption is applicable. Government Code section 54953, subdivision (a) states: "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." Government Code section 54962 further provides: "Except as expressly authorized by this chapter, . . . no closed session may be held by any legislative body of any local agency."
The question presented for resolution concerns a closed session conducted by a local agency as authorized under the terms of Government Code section 54956.8. This statutory exemption states in part:
 "Notwithstanding any other provision of this chapter, a legislative body of a local agency may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to grant authority to its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease.
 "However, prior to the closed session, the legislative body of the local agency shall hold an open and public session in which it identifies its negotiators, the real property or real properties which the negotiations may concern, and person or persons with whom its negotiators may negotiate.
 "For purposes of this section, negotiators may be members of the legislative body of the local agency."
We are asked whether the mayor of a charter city, who is designated as the executive head of the city by the city charter, may attend a closed session of the city's redevelopment agency where the members of the agency are appointed by the mayor with the approval of the city council and the purpose of the closed session is to conduct a conference with the agency's real property negotiators who are negotiating the disposition and development of property, a portion of which is owned in part by the city, for construction of a publicly owned city conference center and privately financed and developed hotel complex. We conclude that, under the circumstances presented, the mayor may not attend the closed session of the city's redevelopment agency.
As authorized by the Community Redevelopment Law (Health Saf. Code, §§ 33000-33855; "Redevelopment Law"), there is "in each community a public body, corporate and politic, known as the redevelopment agency of the community." (Health Saf. Code, §33100.) A city is among the entities that constitutes a "community." (Health Saf. Code, § 33002.) The city council, as the legislative body of the city (Health Saf. Code, § 33007), may by ordinance declare itself to be the redevelopment agency (Health Saf. Code, §33200), or it may appoint either five or seven city residents to serve as members of the agency (Health Saf. Code, §33110). Here, the city council has done the latter.
We note that a city's redevelopment agency must be considered separate from the city itself. "Redevelopment agencies are governmental entities which exist by virtue of state law and are separate and distinct from the communities in which they exist." (Pacific States Enterprises, Inc. v. City of Coachella (1993) 13 Cal.App.4th 1414, 1424.) A city's redevelopment agency is a "local agency" and its board is a "legislative body" for purposes of the Brown Act. (Stockton Newspapers, Inc. v. Members of the Redevelopment Agency of the City of Stockton (1985)171 Cal.App.3d 95, 100.)
In our pamphlet, The Brown Act, Open Meetings for Local Legislative Bodies (Cal. Dept. of Justice, 1994), we examined whether interested members of the public could attend a closed session of a legislative body. We stated:
 "In 46 Ops.Cal.Atty.Gen. 34 (1965), this office . . . concluded that meetings could not be semi-closed. Thus, certain interested members of the public may not be admitted to a closed session while the remainder of the public is excluded. Nor would it be proper for an investigative committee of a grand jury performing its duties of investigating the county's business to be admitted to a closed session. [Citation.] As a general rule, closed sessions may involve only the membership of the body in question plus any additional support staff which may be required (e.g., attorney required to provide legal advice; supervisor may be required in connection with disciplinary proceeding; labor negotiator required for consultation). Persons without an official role in the meeting should not be present." (Id., at p. 29.)
In a recent opinion, 82 Ops.Cal.Atty.Gen. 29 (1999), we concluded that an alternate member of a local agency formation commission ("LAFCO") may not attend a closed session unless sitting in place of an absent or disqualified member. (Id., at pp. 33-34.) In so concluding, we made the following observation:
 "Undoubtedly, it would be beneficial for alternate members to be present at all hearings of a LAFCO since proposals are commonly considered at more than one meeting. Attendance by all alternate members would allow them to be fully informed if and when they must replace the regular members who are absent or disqualified. Moreover, to permit alternate members to participate in the hearings and deliberations to the same extent as regular members (except voting) would enhance a fuller discussion and consideration of each proposal. In short, LAFCO and the public would benefit by having alternate members present at all public hearings and participate in the deliberations." (Id., at p. 32.)
Nonetheless, we concluded that, as to the closed session, the presence of the alternate member would not be authorized under the terms of section54956.8. (Id., at pp. 33-34.)
In the present situation, what role would the mayor have in the closed session of the redevelopment agency? We are informed that the mayor is designated as the executive head of the city by the city charter, the city owns a portion of the property on which the redevelopment project will be constructed, and the project will include a publicly financed and publicly owned city conference center. The redevelopment agency must obtain the city council's approval of any disposition of property acquired with tax increment funds. (Health Saf. Code, §33433.)[1] The agency must also obtain the consent of the city council to pay for land and improvements that are publicly owned either within or without the project area. (Health Saf. Code, § 33445; see also Health Saf. Code, §33679.)
Under these particular circumstances, however, we fail to see how the mayor's presence would come within the language of Government Code section 54956.8 that "a local agency may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to grant authority to its negotiator regarding the price and terms of payment for the purchase, sale, exchange or lease" of real property. (Italics added.) While a portion of the real property at issue is owned by the city and the redevelopment project includes construction of a city facility, the closed session would concern the negotiating posture of the redevelopment agency, not the city, with respect to the disposition and development of the project property. The city's negotiator, the mayor, is not the redevelopment agency's negotiator and would have no official role to play at the redevelopment agency's closed session under the express provisions of section 54956.8. Of course, it is statutorily irrelevant that the mayor is an elected official or is the appointing power for the members of the redevelopment agency.
We reject the suggestion that in attending the redevelopment agency's closed session, the mayor would be acting as part of the "support staff" of the redevelopment agency, offering advice and consultation at the request of the redevelopment agency "regarding the price and terms of payment for the purchase, sale, exchange, or lease" (Gov. Code, §54956.8) of the city's property. While it may be true that a coordinated negotiating strategy between the city and the redevelopment agency would be beneficial, the presence of the mayor at the closed session would not be essential in conducting the redevelopment agency's business. Nothing precludes the redevelopment agency's negotiators from conferring with the mayor, as the city's negotiator, either prior to or following the closed session. The assertion that the redevelopment agency may obtain the services of city officers when needed (see Health Saf. Code, §§ 33128, 33205,33220, ) is unpersuasive where, as here, there is a countervailing statutory scheme which precludes the presence of non-essential support staff at a closed session of the redevelopment agency.
In reaching our conclusion, we are mindful that the Brown Act is to be interpreted liberally in favor of open meetings and that exceptions are to be narrowly construed. (San Diego Union v. City Council (1983)146 Cal.App.3d 947, 954-955; 73 Ops.Cal.Atty.Gen. 1, 5 (1990).) Government Code section 54956.8, authorizing closed sessions with property negotiators, cannot be broadly construed here to allow the mayor's presence at the closed session where the mayor would have no official or essential role to play.
Accordingly, we conclude that the mayor of a charter city, who is designated as the executive head of the city by the city charter, may not attend a closed session of the city's redevelopment agency, the members of which are appointed by the mayor with the 500-506 approval of the city council, when the purpose of the closed session is to conduct a conference with the redevelopment agency's real property negotiators who are negotiating the disposition and development of property, a portion of which is owned by the city, for construction of a publicly financed and publicly owned city conference center and privately financed and developed hotel complex.
[1] The funding mechanism provided for community redevelopment is known as "tax increment financing." (Redevelopment Agency v. County of San Bernardino (1978) 21 Cal.3d 255, 259.) This financing system anticipates that redevelopment will increase tax revenues for a community by virtue of an increased valuation of property, thus raising the tax base. (Community Redevelopment Agency v. Woolsey (1985) 169 Cal.App.3d 24,27.)